IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MOE'S FRANCHISOR LLC,

    Plaintiff,

v.

TAYLOR INVESTMENT
PARTNERS, II, LLC; TIP-II-
ANSLEY, LLC; AND TIP II-
SUBURBAN, LLC,

    Defendants.

CIVIL ACTION FILE

NO. 1:15-CV-3504-MHC

## ORDER

This case comes before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 30]. For the reasons stated below, Defendants' motion is **GRANTED**.

**I.    BACKGROUND**

This case stems from a long-running dispute between Plaintiff Moe's Franchisor LLC ("Moe's") and Defendants Taylor Investment Partners, II, LLC, TIP II-Ansley, and TIP II-Suburban (collectively, "TIP Defendants"), at the center of which is Moe's attempt to terminate franchise agreements between the parties. Moe's, the franchisor of the "Moe's Southwest Grill" brand, operates and

administers the "Moe's" restaurant concept. Compl. [Doc. 1] ¶ 5. TIP Defendants are franchisees who operate two Moe's restaurants in Atlanta. Id. ¶¶ 7-9.

According to the allegations in the Complaint, TIP Defendants entered into an Assignment, Assumption, and Consent Agreement on May 15, 2003 to operate a Moe's restaurant located at 1544 Piedmont Avenue (the "Ansley location") subject to a franchise agreement between Moe's predecessor and the predecessor franchisee. Id. ¶ 8. On March 5, 2004, TIP Defendants entered into a second franchise agreement to operate a Moe's restaurant located at 1524-A Church Street in Decatur (the "Decatur location"). Id. ¶ 9. Pursuant to these agreements, TIP Defendants were subject to a variety of requirements under the "Moe's System," including Moe's right to reasonable inspection of premises, equipment, food products, and ingredients. Id. ¶¶ 10-14. Furthermore, each franchise agreement provided that it would terminate immediately upon a franchisee's filing of a petition for bankruptcy. Id. ¶ 17; see Franchise Agreements, attached as Exs. 2 and 3 to Compl. [Docs. 1-2 and 1-3].

In December 2012, both franchise agreements were placed in default after TIP Defendants failed inspections at their Decatur and Ansley locations. Id. ¶¶ 33-37. The agreements were thus subject to termination unless TIP Defendants were able to pass a third inspection of each location. Id. ¶ 37. Although TIP Defendants

2

failed these final inspections at both locations in February 2013, Moe's subsequently granted TIP Defendants' two termination deferral requests to permit time to pursue a sale to a replacement franchisee. Id. ¶¶ 38-39. When the second of these requests expired in October 2013 (with no sale consummated), TIP Defendants filed a lawsuit to prevent the termination of the franchise agreements. Id. ¶ 40.

The parties ultimately submitted their dispute to binding arbitration. Id. ¶ 41. Following the presentation of argument and evidence, the arbitrator found that Moe's had "not met its burden of showing that all of the subject . . . [i]nspections were properly and fairly administered,"[1] and ordered that Moe's termination of TIP Defendants' franchise agreements could only proceed if their restaurants failed to achieve passing scores in inspections administered according

---

[1] Specifically, the arbitrator explained that the evidence presented was "significantly confusing over the critical issue of whether the subject . . . [i]nspections . . . were properly and fairly administered," and therefore that

> [b]ased on the extensive amount of evidence on this question presented by both parties, a reasonable fact finder could reach either conclusion on the Proper Testing Issue, i.e., (i) that the . . . [i]nspections at issue were all properly and fairly administered, and therefore the terminations should be permitted; or (ii) that the various . . . [i]nspections at issue were not properly and fairly administered, and therefore the terminations may not proceed.

Award of Arbitrator [Doc. 1-6] at 4.

3

to a modified set of guidelines imposed by the arbitrator. Award of Arbitrator at 4-6; Compl. ¶¶ 42-46. TIP Defendants' Decatur location subsequently failed one of these inspections and, on August 4, 2014, Moe's sent TIP Defendants a termination notice stating that their franchise agreement for the Decatur location would terminate on January 25, 2015. Compl. ¶ 47.

On January 22, 2015, TIP Defendants filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, thereby automatically staying any potential collection activity by Moe's under 11 U.S.C. § 362. Id. ¶ 15. Shortly afterwards, Moe's filed a Motion for Relief [Doc. 1-4] with the bankruptcy court seeking relief from the court's automatic stay to exercise its rights to terminate the franchise agreements. Id. ¶ 16. Specifically, Moe's argued that, according to the franchise agreements' terms, TIP Defendants' bankruptcy filing was a ground for immediate termination of the agreements, as was Defendants' failure to comply with the "Moe's System" in operating their Decatur location (i.e., Defendants' failure of the final inspection). Id. TIP Defendants disputed the enforceability of the agreements' bankruptcy termination provision. In a June 29, 2015, order, the bankruptcy court found this disputed term to be enforceable, and modified the § 362 automatic stay to allow Moe's to exercise its termination rights against TIP

4

Defendants under the franchise agreements. See Bankruptcy Court's Order on Stay Relief [Doc. 1-5] ("Bankruptcy Order"); Compl. ¶ 18.

Moe's now alleges that, although the franchise agreements were automatically terminated upon the entry of the Bankruptcy Order, TIP Defendants have continued to operate their franchises under Moe's trademarks and trade names without any contractual right to do so. Id. ¶¶ 25-28. Moe's requests that this Court issue a declaratory judgment affirming its right to enforce the automatic termination of the franchise agreements pursuant to 28 U.S.C. §§ 2201 and 2202, as well as a permanent injunction barring TIP Defendants from the operation of their restaurants. Id. ¶¶ 25-28, 30-31. Moe's separately requests that this Court enter a permanent injunction barring TIP Defendants from operating the Moe's restaurant at their Decatur location based on their failure of the final inspection conducted pursuant to the arbitrator's award. Id. ¶¶ 47-52.

## II. LEGAL STANDARD

Rule 12(b)(1) permits dismissal of a complaint for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). When a defendant challenges a plaintiff's standing by bringing a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Thus, a plaintiff who asserts federal question jurisdiction

5

under 11 U.S.C. § 1331 bears the burden of establishing that, although his claim is cognizable under state law, it nevertheless raises a "stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[.]" Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1295 (11th Cir. 2008) (quoting Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)).

An attack on subject matter jurisdiction can either be a "facial attack" or a "factual attack." See Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir.1999) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.1990)).

> Facial attacks on a complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion. Factual attacks challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."

Id. (citations and quotation marks omitted). TIP Defendants' Motion to Dismiss for lack of subject matter jurisdiction in this case is a facial attack on the Complaint. See Defs.' Br. In Supp. of Mot. to Dismiss at 3 [Doc. 30-1] ("Defs.' Br.") at 3.

## III. DISCUSSION

### A. The Procedural Posture of This Case

As explained above, the franchise agreements between Moe's and TIP Defendants provide that the commencement of a bankruptcy case automatically terminates the agreements. Compl. ¶ 19. However, the issue before the bankruptcy court was whether this provision in the franchise agreements was enforceable. Although 11 U.S.C. § 365(e)(1),[2] the so-called *ipso facto* clause, provides that "termination upon bankruptcy" clauses generally are unenforceable, § 365(e)(2) creates an exemption to this general rule if "applicable law excuses a

---

[2] The statute provides in relevant part:

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
>
> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
>
> (B) the commencement of a case under this title; or
>
> (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11 U.S.C.A. § 365(e)(1) (2012).

7

party, other than the debtor, to such contract or lease . . . from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease" and "such party does not consent to such assumption or assignment[.]" 11 U.S.C. § 365(e)(2)(A)(i)-(ii).

In their briefing before the bankruptcy court, neither party disputed that the franchise agreements at issue are executory contracts whose transfer, without Moe's consent, would be barred under § 365(e)(2) by federal trademark law, which prohibits unauthorized assignment of a trademark license like those found in the franchise agreements. See Bankruptcy Order at 4 & n.1. Instead, at issue was whether 11 U.S.C. § 365(c) should be construed to prevent Moe's from exercising its termination rights under § 365(e)(2). Id. at 3. This issue is the subject of a circuit split, and the parties disputed in their briefing before the bankruptcy court whether the Eleventh Circuit's decision in In re James Cable Partners, L.P., 27 F.3d 534 (11th Cir. 1994), constituted precedential authority on the question. Id. at 4. The bankruptcy court agreed with Moe's that the Eleventh Circuit's decision in James Cable did set binding precedent, and therefore construed § 365(c) to permit Moe's to enforce the franchise agreements' "termination on bankruptcy" clause. Bankruptcy Order at 8-11. Specifically, the bankruptcy court concluded that

"cause exists to modify the stay to allow [Moe's] to exercise its state-law rights with respect to the agreements." Id. at 13.

This history is necessary to understanding the novel theory under which Moe's now seeks relief. Instead of bringing a claim for breach of contract in state court based on TIP Defendants' bankruptcy filing, as suggested by the Bankruptcy Order, Moe's now asks this Court for an extraordinary remedy: based on its claim that the franchise agreements with TIP Defendants were automatically terminated upon Defendants' bankruptcy filing under 11 U.S.C. § 365(e)(2), Moe's seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.[3] Compl. ¶¶ 1-2. This is necessary because (as Moe's concedes) 11 U.S.C. § 365(e)(2) provides for no private right of action to enforce a "termination on bankruptcy" clause. See Pl.'s Opp'n to Defs.' Mot. to Dismiss [Doc. 32] ("Pl.'s Opp'n") at 19. Thus, Moe's assertion that this Court may hear its claims relies on two arguments: first, that under the Supreme Court's decision in Grable, 545 U.S. at 314, Moe's claims present a "disputed and substantial question" of federal law warranting the exercise

---

[3] 28 U.S.C. § 2201 empowers a district court, "in case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2012). 28 U.S.C. § 2202 states that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

9

of federal jurisdiction; and second, that its claims also meet the test by which a private right of action can be implied from a federal statute under Cort v. Ash, 422 U.S. 66 (1975). Id. at 13-14, 19-21. TIP Defendants protest that Moe's has attempted to disguise what are otherwise state law breach of contract claims, and that it would be improper for this Court to exercise federal question jurisdiction under Grable or find that an implied cause of action exists under federal law. Defs.' Reply Br. in Supp. of Mot. to Dismiss [Doc. 33] ("Defs.' Reply") at 1, 3-5.

**B.     Federal Question Jurisdiction Does Not Exist**

A plaintiff may establish federal question jurisdiction where his claim is cognizable under state law but nevertheless raises a "stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[.]" Adventure Outdoors, Inc., 552 F.3d at 1295 (quoting Grable, 545 U.S. at 314). As the Supreme Court explained in Grable, the variety of variables a court must weigh before exercising federal question jurisdiction precludes the application of any "'single, precise, all-embracing' test for jurisdiction embedded in state-law claims." Grable, 545 U.S. at 314 (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 821 (1988) (Stevens, J., concurring)). For instance, the absence of a federal cause of action is not

dispositive of a Grable claim: instead, Grable explains that "the absence of a federal private right of action" is "evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." Id. at 318 (quoting Merrell Dow Pharm. Inc. v. Thomson, 478 U.S. 804, 810 (1986)).

Although Moe's styles its present claims as "cognizable under state law" (and therefore within Grable's reach), this is not an accurate representation of the case. To the contrary, the claims upon which Moe's alleges federal question jurisdiction arise solely under Title 11 of the United States Code (the Bankruptcy Code), and would not be cognizable in state court. See Compl. ¶ 1. In effect, it appears that Moe's claims are not brought under Grable but pursuant to what Moe's describes as a "federal right afforded under the Bankruptcy Code to terminate the franchise agreements." Pl.'s Opp'n at 9. As explained above, Moe's concedes that there is no private right of action by which it might pursue its "Bankruptcy Code Termination Right," but nevertheless argues that this Court should recognize an implied federal right of action. Id. at 10-11 & n.8.

The Court declines to do so. In Cort v. Ash, the Supreme Court identified four factors courts should apply in determining whether a private remedy is implicit in a federal statute:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in

> favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78 (internal citations and quotation marks omitted). As the Court later clarified, however, the "central inquiry" under Cort's four factors remains "whether Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross & Co. v. Redington, 442 U.S. 560, 575-76 (1979).

Moe's identifies nothing in the legislative history of 11 U.S.C. § 365 that would indicate Congress intended to provide plaintiffs with a private right of action. See Pl.'s Opp'n at 19-21. Furthermore, it appears that Congress has created private rights of action in other sections of the Bankruptcy Code. See, e.g., 11 U.S.C. §§ 362(k) and 526(c)(3) (2012); In re Newton, Adv. No. 08–01106, 2009 WL 277437 at *5 (Bankr. M.D. Ala. Jan. 29, 2009) (relying on this reasoning in rejecting a similar claim). Had Congress intended a similar private right of action to exist under 11 U.S.C. § 365, it would have created one.

The Court also agrees with TIP Defendants that what Moe's styles as a "Bankruptcy Code Termination Right" is in fact a counterargument to TIP Defendants' potential defense, in a bankruptcy proceeding or breach of contract

12

litigation, that 11 U.S.C. § 365(e)(1) renders unenforceable a contractual *ipso facto* termination on bankruptcy clause. Defs.' Reply at 6. See Liberty Mut. Ins. Co. v. Greenwich Ins. Co., 286 F. Supp. 2d 73, 76-77 (D. Mass. 2003) ("The defense of the unenforceability of the *ipso facto* clause arises by operation of law . . . [under] section 365(e)(1) of the Bankruptcy Code"). In other words, were this Court to recognize the private right of action under which Moe's seeks relief, for which it provides no legal precedent, it would effectively allow some plaintiffs to make an end-run around a properly pleaded breach of contract or bankruptcy claim. This fact further reinforces the conclusion that Congress did not intend to create such a right of action under 11 U.S.C. § 365. Accordingly, Counts I and II are hereby **DISMISSED**.

Moe's also requests that the Court exercise supplemental jurisdiction over Count III's state law claims. 28 U.S.C. § 1367(a). It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. See, e.g., Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997); see also 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a related state law claim when it has dismissed all claims for which it has original

13

jurisdiction). Because the Court finds that Plaintiff's state law claims should be litigated in state court, Count III of the Complaint is hereby **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3). See L.A. Draper & Son v. Wheelabrator–Frye, Inc., 735 F.2d 414, 428 (11th Cir.1984) (noting that when "federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of the state claims.") (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 30] is **GRANTED**.

The Clerk is directed to close this case.

**IT IS SO ORDERED** this 3rd day of November, 2016.

_____
MARK H. COHEN
United States District Judge